### JIM SPARKS v. THE STATE.

No. 3582.    Decided June 9, 1915.

**1.—Robbery—Variance—Description of Money.**

Where the indictment charged that the money was lawful money of the United States of America; towit, seven dollars, and the evidence showed that the defendant took six dollars from the prosecuting witness, the contention that the proof must show that the money taken was lawful money of the United States of America is untenable, and there was no reversible error. Following Menear v. State, 30 Texas Crim. App., 475.

**2.—Same—Rule Stated—Dollars—Money.**

When the allegation is that the accused took money which was lawful money of the United States of America and the proof is that the person took so many dollars in money, the evidence sufficiently proves the allegation. Following Berry v. State, 46 Texas Crim. Rep., 420, and other cases.

**3.—Same—Possession—Insufficiency of the Evidence.**

Where, upon trial of robbery, the indictment alleged that the money was taken from the possession of John Noles, it was necessary to prove that allegation, and where this was not done, the same was reversible error.

Appeal from the District Court of Wichita.   Tried below before the Hon. Edgar Scurry.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Fletcher S. Jones,* for appellant.—On question of variance: Statum v. State, 9 Texas Crim. App., 273; Simpson v. State, 10 id., 681; Lancaster v. State, 9 id., 393; Early v. State, 56 Texas Crim. Rep., 61, 118 S. W. Rep., 1036; Snelling v. State, 57 Texas Crim. Rep., 416, 123 S. W. Rep., 610; Johnson v. State, 58 Texas Crim. Rep., 442, 126 S. W. Rep., 597; Robinson v. State, 60 Texas Crim. Rep., 592, 132 S. W. Rep., 944.

On question of proving name of injured party: Brown v. State, 53 Texas Crim. Rep., 303, 109 S. W. Rep., 188; Hankins v. State, 57 Texas Crim. Rep., 152, 122 S. W. Rep., 21; Robinson v. State, 60 Texas Crim. Rep., 592, 132 S. W. Rep., 944; Tucker v. State, 59 Texas Crim. Rep., 291, 128 S. W. Rep., 617; Butts v. State, 47 Texas Crim. App., 494.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was indicted in this case charged with robbing "John Noles of seven dollars, lawful money of the United

States of America." When convicted, he prosecuted an appeal to this court, alleging that the evidence is insufficient to sustain the conviction, and the court erred in not giving the special charges requested so instructing the jury.

J. C. McDaniels testified that he saw appellant and Charles Eshelman feeling through an old man's clothes who had just gone out of his saloon; that the old man was begging them to leave him sixty cents to get his breakfast with. That one of them said, "Be quiet or I will knock your head off." That he, witness, ran out there, when appellant and Eshelman ran, when he called the police. That the old man said they got his money. He said they got about six dollars.

The first contention is, that as the indictment charges that the money "was lawful money of the United States of America," this was descriptive of the money alleged to have been taken, and, therefore, it was necessary to prove that the money taken was lawful money of the United States of America, and as no witness so testified, the proof would not sustain a conviction. We are aware that we have some cases so holding, while we have cases holding otherwise. We do not deem it necessary to cite either of the line of cases, but will say that in our opinion Judge Davidson correctly laid down the true rule in Menear v. State, 30 Texas Crim. App., 475. In that case the indictment alleged in a case of robbery that the property taken was "ten cents in the money of the United States of America." The only evidence was the accused had taken ten cents in silver, and it was held to be sufficient to sustain the allegation in the indictment. The United States, so far as we are aware, is the only country that now divides its money into and denominates its money dollars and cents. In England we have pounds, shillings and pence; in Germany, marks and pfennige; in France, francs and centimes; in Spain, pesetas and centimo; in Mexico, peso and centavos. So when one swears another took from him six dollars in money it necessarily conveys the idea that he had taken money of the United States of America. If the evidence suggested that any other circulating medium used as money was taken, then, of course, it would be incumbent on the State to prove that it was "lawful money of the United States of America." No other construction could be placed upon such language, and we think that line of cases which hold that when the allegation is that one took money, lawful money of the United States of America, and the proof is that the person took so many *dollars* in money, the evidence sufficiently proves the allegation. If it was not money of the United States, the allegation would be that he took so many pounds, marks, pesetas, pesos or francs, current and passing as money. When we say one took from another six dollars in money in this country, it means and conveys the idea, and only the idea, that he took money of the United States of America. Judge Henderson in the case of Berry v. State, 46 Texas Crim. Rep., 420, discusses this question at length and digests the various decisions. In Ferrell v. State, 68 Texas Crim. Rep., 487, p. 495, after discussing the question at length, this court held that such proof was sufficient to sustain such

allegation, and expressly stated: "All cases in conflict herewith are hereby overruled." We see no reason to change our opinion. It is true that there was in circulation in the seventeenth and eighteenth centuries in Spanish America what was termed the Spanish "milled dollar," or "pillar dollar," so called from the figure of the "Pillars of Hercules" thereon, and in our first coinage laws, after our independence, our dollar was made of the same weight and value. But it has been many years since the "pillar dollar" was in circulation to any considerable extent in the United States, and it was not called a dollar in Spain, but was called pesetas or peso. No such dollar is now in circulation in this country.

Another question is presented, however, as to the sufficiency of the evidence. The indictment alleged that the money was taken from the possession of John Noles, and it was, therefore, necessary to prove that it was taken from the person named. Mr. McDaniels testified that he saw appellant and Charles Eshelman going through the clothes of an old man, and that the old man said they got six dollars from him. That he did not know the name of the old man, and did not know that he was named John Noles—that he did not know where the old man is now. It is thus seen that this witness would not and could not identify the man whom he says was robbed as the man named John Noles. He swears positively he did not know his name, and did not now know where he was at the time of the trial. The only other witness introduced was Sheriff Hawkins, who testified: "I know that John Noles is dead; he died about two weeks from the alleged robbery from natural causes." One might infer from this that the man who died was the man who was robbed, but it would simply be an inference. John Noles may have died two weeks after the alleged robbery, but there should have been some proof offered that he was the old man McDaniels says he saw defendant and another rob. On another trial it should be shown that John Noles, the dead man, was the old man whom McDaniels saw robbed, if that is a fact. It should be shown in some way that the man robbed was named John Noles, and as there is no evidence in this record to prove that fact, the case must be reversed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Judge.—I think the case ought to be reversed on both grounds.