## HOOPER WILLIS V. THE STATE.

No. 17666.   Delivered June 26, 1935.
Rehearing Denied October 23, 1935.

The opinion states the case.

*Robt. H. Hopkins,* of Denton, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted of the offense of robbery, and his punishment was assessed at confinement in the State penitentiary for a term of 5 years.

The facts proven upon the trial of this case show that on Sunday night, October 22, 1933, two men appeared at the home of W. R. Madewell at about 9 P. M. and robbed him of $360.00.   At the time of the robbery Mr. Madewell's son and his wife were there spending the night with him.   When the two robbers appeared at the home of Mr. Madewell all the occupants had retired for the night except Mr. Madewell, Sr. There was no light burning in the house.   The robbers came upon the porch and called Mr. Madewell by name and when

he went to the door to see who the belated visitors were, they pointed pistols in his face and inquired if anyone else was at his house. When informed by Mr. Madewell that his son and daughter-in-law were in bed, they marched him into said room and commanded him to sit on the side of the bed, and while one of the robbers guarded them the other proceeded to Mr. Madewell's bedroom and took $360.00 out of a small trunk in an old sideboard. This was all the money the trunk contained. He then returned to the room where his companion held Madewell, his son, and daughter-in-law prisoners and after a whispered conversation they left the house, entered an automobile and drove away. Each one of the robbers had a pistol and· a flashlight which they flashed about in the room and from the reflection of the lights Mr. Madewell, his son, and daughter-in-law recognized one of the robbers to be Theodore Hawk. They also recognized him by his voice as they had known him for a number of years. When Mr. Madewell entered his bedroom he saw that the drawer of the sideboard was open, some of the articles laying on the floor, and the little trunk was also on the floor. While straightening up the room he found a car key which he turned over to the sheriff of Denton County. Some two weeks later Mr. Madewell was sitting in the sheriff's office in the city of Denton and while there noticed a person coming towards the courthouse whom he recognized as one of the persons who had robbed him and who proved to be the appellant. The appellant was subsequently arrested at his apartment in the city of Fort Worth, at which time the officers noticed a Ford automobile parked near the apartment. The sheriff fitted the automobile key turned over to him by Mr. Madewell into the ignition switch of said car and it fitted perfectly. Mr. Madewell, his son, and daughter-in-law each and all positively identified the appellant as one of the men who committed the robbery. They identified him by his general appearance, his clothes, and his voice. Upon the trial the appellant's defense was that of an alibi. He denied that he was at the home of Mr. Madewell on the night of the alleged robbery or that he had any connection therewith whatever; that on the night of the robbery he was at the home of his brother-in-law at Lake Worth in the city of Fort Worth, and in this he was corroborated by a number of witnesses.

Bill of execption No. 1 reflects the following occurrence: On the 3rd day of December, 1934, the appellant by and through his attorney filed and presented to the court an application for an order to draw and summon a special venire in

this case inasmuch as the indictment contained two counts, one charging robbery by the use of firearms, a capital offense under the statute, and the other count charged robbery by assault and by putting the said W. R. Madewell in fear of death and serious bodily injury. When this application for a special venire was presented to the court, the county attorney moved to dismiss the first count in the indictment which charged a capital offense under the statute. The court sustained the county attorney's motion and dismissed said count and then overruled the appellant's demand for a special venire. When this was done the case stood upon the docket of the court as though the appellant had been charged with only one count in the indictment, which did not aver a capital offense. Under the circumstances it occurs to use that no error was committed by the trial court, and in support of the views herein expressed we refer to the case of Williams v. State, 119 Texas Crim. Rep., 564, 45 S. W. (2d) 628, where the same question as here presented was decided adversely to appellant's contention.

By various bills of exception appellant complains of the action of the trial court in permitting the State to prove on the trial of the case that pistols were used in the perpetration of the robbery, it being his contention that as the State had abandoned this portion of the indictment, it was improper to make proof thereof. The use of the pistols was so intermingled and interrelated to the facts showing the robbery as to make it impossible to separate one from the other. It was clearly a part of the entire transaction and as such was admissible. See Wyatt v .State, 55 Texas Crim. Rep., 73; Carroll v. State, 42 Texas Crim. Rep., 30; Sweeney v. State, 103 Texas Crim. Rep., 394, 281 S. W., 571; Carpenter v. State, 61 S. W. (2d) 849.

The appellant's next contention is that the evidence is insufficient to sustain his conviction because the circumstances surrounding the alleged robbery were such that it made the identification of the robbers impossible. We can not agree with the appellant's contention. Mr. Madewell, his son, and his daughter-in-law all three were positive in their identification of the appellant as one of the robbers. They said that the robbers entered the house with flashlights in their hands; that they flashed the lights around in the room and from the light and reflection of the flashlights they saw the appellant and they subsequently recognized him by his general appearance and by his voice.

The appellant's next contention is that the court erred in declining to submit to the jury the question of the suspension of appellant's sentence. The benefit of the suspended sentence law does not apply to cases of robbery. See Art. 776, C. C. P.; Carreon v. State, 236 S. W., 985; Bratcher v. State, 69 S. W. (2d) 86.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Appellant contends that the evidence fails to show that he was present at the time of the commission of the offense. He takes the position that Theodore Hawk was recognized but that appellant was not identified as one of those who robbed Mr. Madewell. As we read the statement of facts, it is in conflict with the above contention. From the testimony of Mr. Madewell, the person who was robbed, we quote: "The first notice that I had that there was anybody there at my house that night * * * was somebody came to the porch and called for me. * * * I went to the door and when I opened it there was a couple of fellows standing there and they throwed their guns on me. * * * They asked me was I there by myself. I told them, 'No.' * * * I knowed who one of those men was. * * * I know now who those two men were; one of them was Theodore Hawk and the other one was Hooper Willis. It was Willis that made that first remark to me. * * * Willis told Hawk: 'I will hold them here; you go ahead and plunder the house and I will hold them here.' Hawk left the room and while he was gone Willis was standing there with his gun on us."

Mrs. Lee Madewell, an eye-witness to the robbery, testified that she identified both appellant, Hooper Willis, and Theodore Hawk as the parties who committed the offense. She testified: "Both of them had a flashlight and a pistol. Hooper Willis had his pistol stationed on all three of us while Hawk was gone. * * * While Hopper Willis was there in the room he asked Mr. Madewell if he had the time and he told him that he did, and he (Willis) brought his flashlight over there and threw it on Mr. Madewell's watch and saw

what time it was. * * * I recognized him by his face and his clothes too. * * * I tell the jury that I recognized him then and now as the man that came there with Hawk that night."

A further quotation of the testimony would but emphasize that which has just gone before.

We feel constrained to overrule the motion for rehearing, which is accordingly done.

*Overruled.*